UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-CR-80053-CANNON/MCCABE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

KEITH DUANE MCINTOSH,

    Defendant.
_____/

### **DEFENDANT KEITH DUANE MCINTOSH'S MOTION FOR A DOWNWARD VARIANCE**

COMES NOW the Defendant, KEITH DUANE MCINTOSH ("Defendant"), by and through undersigned counsel, to respectfully submit this Motion for a Downward Variance pursuant to 18 U.S.C. § 3553(a), requesting that the Court impose a sentence of twenty-five (25) years' incarceration. In support, the Defendant states the following:

**Background**

On December 29, 2024, Defendant Keith Duane McIntosh will present himself to the Court for sentencing. [ECF 63] Mr. McIntosh pleaded guilty to both counts of a superseding indictment. [ECF 26] Count 1 of the indictment charged Conspiracy to Advertise Child Pornography in violation of 18 U.S.C. § 2251(d) and (e). Count 2 charged Conspiracy to Distribute Child Pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). [Presentence Investigation Report ("PSR"), p. 2] As calculated in the PSR, Mr. McIntosh's Total Offense Level is 43. [PSR, par. 165] He has a criminal history category I. [PSR, par. 168] As a result, his United States Sentencing Guidelines ("USSG") sentence is life. [PSR, par. 207] However, the statutory maximum penalties for the statutes of conviction are less than the guideline sentence. Therefore,

1

the guideline range becomes the consecutive maximum sentences authorized by statute, which is 90 years (40- and 50-year maximums) or 1080 months. [USSG Section 5G1.2(b) and PSR, par. 207]

**Argument**

Title 18, United States Code, Section 3553(a) contains the factors that the Court must apply to impose a reasonable sentence for the Defendant. Federal courts must consider all factors enunciated in Section 3553(a) when sentencing a defendant. Thus, in *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court determined that the sentencing guidelines are "effectively advisory." Moreover, district courts may not treat the sentencing guidelines as presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007); *United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006). In many cases application of the guidelines does not yield a reasonable sentence. *United States v. Hunt*, 459 F.3d at 1184. "It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996)

**Section 3553(a) Factors**

Section 3553(a) instructs that the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in Section 3553(a)(2). The section lists a series of factors for the Court to consider in passing sentence. Those factors, in pertinent part, are the following:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed -

2

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement-

    (A) issued by the Sentencing Commission . . . and

    (B) that . . . is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Also, 18 U.S.C. § 3582(a) requires the sentencing court to "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that *imprisonment is not an appropriate means of promoting correction and rehabilitation*." (Emphasis added.)

**Application of Section 3553(a) Factors**

<u>Nature and Circumstances of the Offense</u>

    The Defendant pleaded guilty to conspiracies to advertise child pornography and to distribute child pornography. The Defendant readily admits the crimes of which he has been convicted.

While the Defendant does not seek to minimize his role in the crime, it is significant to note that he was not responsible for the taking of child pornography photographs or the production of videos. He did not take such photos, direct the taking of those photos, film or direct the production of such videos, or engage directly in the sexual abuse suffered by the child victims. Moreover, Mr. McIntosh did not derive monetary profit from his involvement in these conspiracies. While he was an administrator in the pornographic website and accepts responsibility for the harm that it caused, his primary role was to be the administrator of the role play/fantasy area of the website. As suggested by the focus of this area, it was not photographic or video abuse of children. Instead, it concerned make believe, fictious scenarios that were not dependent on physical harm to any of the victims of the website.

The website was monstrous, and the defendant does not deny that. Nevertheless, his position and responsibility within it is important in determining a just sentence. The fact that his role involved fantasy and creation of fictious stories as opposed to the horrid actual abuse of the websites victims warrants imposition of the recommended sentence of 25 years' incarceration.

History and Characteristics of the Defendant

Mr. McIntosh is 65 years old. [PSR, par. 174] He is in ill health as McIntosh suffers from numerous chronic and potentially life-threatening medical conditions. These conditions are the following: 1) a pulmonary embolism suffered in 2018 for which he takes blood thinners – thus increasing the danger of a fatal brain bleed; 2) diabetes for which he takes medication; 3) high cholesterol, also resulting in medication; 4) hypertension, again controlled through medication; and prostate cancer, also requiring medication. [PSR, par. 181] In addition to these conditions, Mr. McIntosh suffers from sleep apnea. [PSR, par. 181] Since his incarceration Mr. McIntosh has not had the use of a CPAP machine for sleeping. [PSR, par. 181] According Johns Hopkins

4

Medicine of the renowned Johns Hopkins Hospital, uncontrolled sleep apnea could lead to type 2 diabetes, strokes, and heart attacks. [https://www.hopkinsmedicine.org/health/wellness-and-prevention/the-dangers-of-uncontrolled-sleep-apnea]

Mr. McIntosh is 65 years old. A sentence of 25 years' incarceration means that at the time of his release from prison into supervised release, Mr. McIntosh would be between 85 and 90 years old. Moreover, considering his health issues, a 25-year sentence is very possibly a life sentence. Thus, a sentence of 25 years is appropriate and just in view of the defendant's age and health.

Mr. McIntosh has suffered from depression and sexual addiction and apparently continues to suffer from sexual addiction. [PSR, par. 182] During therapy he received the diagnosis of a pedophile with a major depressive episode and compulsive obsessive personality disorder. [PSR, par. 183] The Defendant suffers from emotional and sexual addiction, including a psychiatric diagnosis as a pedophile, illness. These factors were instrumental in explaining his criminal activity involving child pornography. He should not be unduly punished for crimes committed in large part due to illness. Therefore, the requested sentence of 25 years' incarceration is appropriate.

<u>The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment</u>

Respect for the law arises from sentences that are neither too lenient nor too harsh. Mr. McIntosh engage in conspiracies involving the advertising and distribution of child pornography. The crimes of which he was convicted are serious. A sentence of 25 years' incarceration is appropriate in this situation where Mr. McIntosh is 65 years old and suffers from serious health conditions. Moreover, his primary role on the website was to be the administrator of a fantasy or role-playing area that did not involve the photographs or video of child pornography. Thus, in these circumstances a sentence of 25 years' incarceration is consistent with the need to reflect the

5

seriousness of the crime, the need to promote respect for the law, and the need to provide a just punishment for Mr. McIntosh.

The Need to Afford Adequate Deterrence to Others

This sentencing factor addresses the concept of general deterrence. The Court must weigh the necessity of imposing a sentence severe enough to deter others from committing the crimes that Mr. McIntosh committed with the need not to punish him in an unduly harsh manner. To the extent that his punishment becomes known to others, a sentence of 25 years' incarceration will send the message that involving oneself in a conspiracy to either advertise or distribute child pornography is a serious crime and will result in a quarter century of incarceration even when the defendant is elderly and in ill health. Thus, the deterrent value is the statement that such crimes will effectively result in sentences of life incarceration.

The Need to Protect the Public

This sentencing factor addresses the concept of direct deterrence to prevent Mr. McIntosh from committing future crimes. This is a key factor when the crimes involve child pornography and the exploitation of children. Protection of the public from Mr. McIntosh will result from several factors. First, Mr. McIntosh will be almost 90 years old upon his release from prison. Second, should he live long enough to be released, his supervised release can prevent him from owning or utilizing a computer if he is even able to do so. Use of a computer was an indispensable requirement for his crimes of conviction. Restriction from using such a device will provide protection to the public. And third, as will be addressed further below, sex and pedophile offender treatment while incarcerated will further help to protect the public.

The Need to Provide the Defendant with Educational or Vocational Training or Medical Care

Mr. McIntosh has numerous medical issues, discussed above, that will require specific attention from the Bureau of Prisons. However, of strikingly significant importance is the need for his incarceration to include treatment for his mental health and sex addictions. [PSR, par. 186] Incarceration in a facility that offers adequate and comprehensive treatment is necessary. Mr. McIntosh's life has been ruined by his mental and sexual addiction illnesses. Adequate treatment and follow-up counseling while both incarcerated and upon supervised release should Mr. McIntosh survive are essential. With the proper custodial and post custodial treatment, a sentence of 25 years' incarceration is appropriate.

<u>The Kinds of Sentences Available</u>

As to the counts of conviction, the statutory term of imprisonment for Count 1 is a minimum sentence of 25 years and maximum sentence of 50 years in prison. [ECF 26] As to Count 2, the statutory range of imprisonment is a minimum of 15 years and a maximum of 40 years in prison. [ECF 26] The Defendant is ineligible for probation by statute. [PSR, par. 212] The maximum fine for each count is $250,000. [PSR, par. 214] The Probation Office does not recommend a fine in this case. [PSR, par. 205] Each count also results in the imposition of a $5000 assessment if the defendant is not indigent. [PSR, par. 214] However, the PSR does not recommend a fine based on the defendant's indigent status. [PSR, par. 205] The defendant's indigent status will further affect his ability to make payment of the $5000 assessments.

<u>The Sentencing Guideline Range and the Pertinent Policy Statements of the Sentencing Commission</u>

The Defendant's Total Offense Level is 43. [PSR, par. 165] The draft PSR found a criminal history category I. [PSR, par 168] This leads to a guideline range of life imprisonment. [PSR, par. 207] However, the maximum sentence for Count 1 is 50 years and the maximum sentence for Count 2 is 40 years. [PSR, par. 206] Because the total allowable statutory penalty

7

(90 years) is less than the guideline sentence of life, the guideline sentence becomes the statutory maximum of 90 years or 1080 months.  [PSR, par. 207]  Research did not disclose policy statements of the sentencing commission directly pertinent to the case before the Court.

The Need to Avoid Unwarranted Sentencing Disparities

This investigation resulted in four indictments charging at least nine defendants.  [PSR, paras. 8-10 and ECF 26]  Of these defendants the Court has sentenced seven of them.  The sentences for those already sentenced range from a high of life in prison to a low of 250 months. [PSR, paras. 8-10]

The leader of the website was William Michael Spearman.  [PSR, par. 24]  In addition to being the leader of the website, the search of Spearman's devices found 19,422 images or videos of child pornography.  [PSR, par. 69]  Some of the pornography recovered by investigators depicted the torture and abuse of infants.  [PSR, par. 69]  The Court sentenced Spearman to life in prison.  [PSR, par. 9]

David Selwyn Rosenstein held the second ranking position in administration of the website. [PSR, par. 24]   Rosenstein maintained logs that linked to child pornography websites.  The websites linked contained thousands of posts linking to child pornography.  [PSR, par. 28]  Upon the search of Rosenstein's home, investigators an "enormous quantity" of child pornography, "likely a volume that can be measured in terabytes."  [PSR, par. 33]  Moreover, Rosenstein was responsible for more than 600 images of child pornography and over 1200 videos of child pornography, each of which lasted more than five minutes in length with some lasting more than three hours.  [PSR, par. 36]  Moreover, some of the videos contained "infants, toddlers, bestiality, and bandage and discipline, domination, and submission, sadism, and masochism." [PSR, par. 36] The Court sentenced Rosenstein to 336 months incarceration.  [PSR, par. 8]

Joseph Addison Martin was the third highest ranking administrator and was a founding member of the website. [PSR, par. 138] Martin was the moderator of a "room" known as the "Library." It was an area where those permitted access could only post links to child sexual abuse websites containing photographs and videos of child pornography. Thus, the "room" provided access to massive amount of child pornographic material. [PSR, par. 88] Moreover, Martin himself posted links to child pornography on the website. [PSR, par. 89] A search of Martin's home resulted in the seizure of many computers and electronic devices. [PSR, par. 94] An examination of the devices seized revealed about 124,000 images and 7400 videos of child pornography, including depictions of violence and mutilation. [PSR, par. 95] Finally, and most importantly, the computer analysis established that Martin participated in the production of child sexual abuse photographs and videos. [PSR, par. 97] The Court sentenced Martin to 42 years' incarceration.

One person with a lower rank in the website's hierarchy received a sentence higher than the 25 years requested for Mr. McIntosh. Gregory Malcolm Good was a high-ranking member of the website. [PSR, par. 38] Good posted explicit child pornography content on the website. [PSR, par. 40] The seizure and analysis of Good's computer devices revealed more than 2700 images and videos of child pornography, which included violent and sadistic content. [PSR, par. 46] The Court sentenced Good to 310 months' (25 years and 10 months) incarceration. [PSR, par. 9]

Mr. McIntosh was the fourth highest ranking administrator of the website, behind Spearman, Rosenstein, and Martin. Upon the search of his computers, agents found 25 images of child pornography, a significantly smaller number than found on the computers of the others involved in this case. [PSR, par. 123] The PSR did not describe any of the 25 photos as depicting sadism, torture, or violence.

9

The remaining three defendants, who were also administrators of the website, ranked below the defendant. They received sentences of 250 months, 280 months, and 285 months.

A sentence of 25 years' or 300 month's incarceration would fit within the parameters of other sentences ordered to administrators of the website and would not create any unwarranted sentencing disparities.

<u>The Need to Provide Restitution</u>

Restitution is mandatory because this case involves trafficking in child pornography. 18 U.S.C. § 2259(b)(2). The minimum restitution is $3000. Nevertheless, the restitution is to reflect the victims' losses and the defendant's role in the causal process leading to the victims' losses. [PSR, par. 219]

## CONCLUSION

KEITH DUANE MCINTOSH believes that the factors set forth above warrant the granting of a downward variance. The Defendant respectfully requests that the Court order the following: 1) grant his motion for a downward variance and 2) sentence the Defendant to a term of 25 years' incarceration.

Respectfully submitted,

/s/ Richard A. Serafini
Richard A. Serafini, Esq.
Florida Bar No. 0972037
*Counsel for Keith Duane McIntosh*

Serafini Law Office, LLC
One Financial Plaza
100 SE Third Avenue, Suite 2210
Fort Lauderdale, FL  33394
Telephone:  (754) 223-4718
Facsimile:  (800) 535-9913
Email:  ras@rserafinilaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically via CM/ECF this 7th day of December 2024.

/s/ Richard A. Serafini
Richard A. Serafini, Esq.
